UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DARLENE BLAIR | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-156-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| GEICO GENERAL INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

As a result of an automobile accident, Darlene Blair, the plaintiff, has sued GEICO General Insurance Company ("GEICO"), her insurance carrier and the defendant in this case, to collect Underinsured Motorist ("UIM") benefits under her insurance policy. GEICO removed the case to federal court, and here argues that summary judgment is appropriate on two grounds. First, GEICO argues that this case represents the second action arising from the same accident and insurance policy, and because splitting such an action is impermissible under the res judicata doctrine, summary judgment is appropriate.

Second, GEICO claims that until the filing of its second motion for summary judgment, it had not received any Rule 26 expert disclosures. As these late and incomplete disclosures did not comport with the Scheduling Order of this Court or the Federal Rules of Civil Procedure, GEICO claims that expert evidence may not be used pursuant to Rule 37(c)(1). Further, GEICO claims that upon exclusion of Blair's expert testimony, summary judgment is appropriate because under Kentucky law medical testimony is required to prove an element of the action. Because GEICO's second argument is correct, summary judgment is appropriate and Blair's

claims are dismissed with prejudice.

I.

On June 19, 2009, a truck driver, who ultimately proved to be an underinsured motorist, crashed into Darlene Blair allegedly causing injuries to both drivers.  Though her discovery materials are vague on the type of injuries suffered, her medical records indicate that immediately following the wreck Blair was treated for neck pain, an ailment for which she had been treated previously, as well as fibromyalgia.  Blair filed an application for basic reparations benefits ("PIP") from GEICO, her insurance company.  GEICO paid $8,700 of the benefits before it terminated payments upon the recommendation of its physician's evaluation of Blair's injuries.

On March 10, 2011, Blair sued GEICO in Laurel County District Court for improper denial of around $1,300 of PIP benefits, which she claimed she was owed from the June 17 automobile accident.  Over the next month, Blair apparently settled with the tortfeasor in the amount of his policy limits of $25,000.  On April 28, 2011, while her PIP claim was pending in Laurel County District Court, Blair filed an UIM claim against GEICO in the Laurel County Circuit Court because her settlement at the limits of the tortfeasor's insurance policy was insufficient to compensate her for the injuries she sustained in the same June 17 accident.  Subsequently, GEICO paid the remaining PIP benefits, but continued to dispute the amount of interest, court costs, and attorney's fees.  On February 6, 2012, the Laurel County District Court granted GEICO's summary judgment motion and stated, "all claims of the plaintiff, Darlene Blair, against GEICO arising out of the facts set forth in the Complaint are DISMISSED WITH PREJUDICE." [R. 10-3].

GEICO removed the remaining UIM claim to federal court, and here argues that because

this claim was not asserted in the first action, the principles of res judicata bar it from being raised here.  Blair counters that at the time of the filing of the PIP claim the UIM claim was not ripe, and even if it was the two claims are so distinct that they need not be brought in the same action.

        As this automobile accident case continued through discovery, a new wreck developed on the Court's docket.  Blair failed to disclose the specific identity of witnesses with discoverable information as required by Federal Rule of Civil Procedure 26(a)(1).  [R. 9].  On December 27, 2011, GEICO attempted to secure the identities of Blair's possible expert witnesses so that it could begin to prepare its defense, but was unsuccessful.  [R. 15 at 2].  The Court's Scheduling Order required all 26(a)(2) reports from experts to be submitted by the Plaintiff by May 31, 2012, but that date also came and went without any expert disclosures by the Plaintiff.  Having received no expert disclosures, on August 31, 2012, GEICO filed its second motion for summary judgment asserting that without experts Blair lacked medical proof and could not prove her case under Kentucky law.  Blair finally responded, albeit incompletely, to GEICO's requests on September 17, 2012.  [R. 34 at 2].  These responses were not only more than seven months after the deadline set by the requests, but they were also over a month beyond the deadline for the completion of discovery and just two months before the original trial date.  [R.  34].

        On November 20, 2012, Blair filed a notice of intent to take a deposition of Dr. Debra Eadens.  [R. 20].  GEICO filed a motion for protective order on November 29, 2012 to prevent the deposition from taking place due to the many rules and scheduling order violations.  [R. 24].  Blair responded with a motion to amend her expert disclosures with which she finally included the expert disclosure information that was more than six months late under the scheduling order.

3

[R. 25].

Magistrate Judge Edward Atkins granted GEICO's motion for a protective order and denied Blair's motion to amend her expert disclosures pursuant to Federal Rule of Civil Procedure 37(c)(1), effectively excluding all of Blair's medical testimony. [R. 34]. He then subsequently denied Blair's motion to reconsider. [R. 40]. With these events having transpired, the applicable question now existing from GEICO's second motion for summary judgment is whether Blair may proceed in this action without any expert testimony.

## II.

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resourcs Co*., 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)). However, when considering the issue of summary judgment, a federal court applies the standards of Fed.R.Civ.P. 56 rather than "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc*., 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co*. 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

The burden is initially on the moving party to inform "the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4

(1986).  The moving party may make this showing by demonstrating the absence of evidence to

support one of the essential elements of the nonmoving party's claim.  *Id*. at 322-25.

Once this burden is met, the nonmoving party, "must set forth specific facts showing that

there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  Further, "the trial court no longer has a

duty to search the entire record to establish that it is bereft of a genuine issue of material fact."

*Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Instead, "the non-moving

party has an affirmative duty to direct the Court's attention to those specific portions of the

record upon which it seeks to rely to create a genuine issue of material fact."  *In re Morris*, 260

F.3d 654, 665 (6th Cir. 2001).

III.

A.

In determining whether summary judgment is appropriate under GEICO's first motion,

Kentucky's res judicata law governs.  *See Smith v. Bob Smith Chevrolet Inc*., 275 F.Supp. 2d 808

(W.D.Ky 2003).  In general, the res judicata doctrine "stands for the principle that once the rights

of parties have been finally determined, the litigation should end."  *Coomer v. CSX*

*Transportation, Inc.*, 319 S.W.3d 366, 371 (Ky. 2010) (citing *Slone v. R & S Mining Inc*., 74

S.W.3d 259, 261 (Ky. 2002)).   Three elements must be present under Kentucky law for a second

action to be barred by claim preclusion: "(1) identity of the parties, (2) identity of the causes of

action,  and (3) resolution on the merits."  *Id*. (citing *Yeoman v. Commonwealth, Health Policy*

*Board*, 983 S.W.2d 459 464 (Ky. 1998).

Related to the res judicata doctrine of claim preclusion is the rule against splitting causes

of action.  *Id*.  Kentucky courts have adopted the transactional approach of the Restatement

(Second) of Judgments, §§ 24 and 26, which limits all causes of action arising out of a single transaction to a single procedure, so as to require litigants to bring their entire case at one time rather than in a piecemeal fashion. *Id.* (citing *Arnold v. K-Mart Corp.*, 747 S.W.2d 130, 132 (Ky. App. 1988)).  As a result, "a final judgment precludes subsequent litigation not only of those issues upon which the court was required to form an opinion and produce judgment but also of matters included within those issues and matters that, with exercise of reasonable diligence, might have been raised at that time." *Whittaker v. Cecil*, 69 S.W.3d 69, 72 (Ky. 2002) (citations omitted).

GEICO states that Blair's claim is barred under these principles.  Specifically, GEICO argues that this UIM claim arises from the same facts and the same insurance policy as the previous case seeking PIP benefits in Laurel County District Court.  [R. 10 at 2].  GEICO does not argue that the UIM claim was previously decided in state court, but that because it arose from the same transaction, Blair was required to bring the UIM claim with the PIP claim, and bringing the two separately constitutes impermissible splitting.

Blair's response is brief, and she does not seem to argue that her second claim does not arise from the same factual predicate or insurance policy as the first, such that the rule against splitting is not triggered.  Instead, Blair counters that this claim is not barred for two reasons that are recognized exceptions to the rule against splitting.  First, she states that because she did not settle with the tortfeasor at his policy limits until after she had already filed her PIP claim, the UIM claim was not ripe at the time of the filing of the first action.  Therefore, in her view, the claims could be brought separately and were not impermissibly split.  Secondly, Blair argues that because the PIP claim and the UIM claims concerned distinct issues, there could be no identity of the causes of action sufficient to require the claims to be brought together.

6

Kentucky courts have recognized that the rule against splitting causes of action is an equitable rule and is subject to at least two exceptions. *Coomer*, 319 S.W.3d at 72. (citing *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 193 (Ky. 1994); and RESTATEMENT (SECOND) OF JUDGMENTS § 26 (1982)). The first limitation is that "a prior claim will not preclude a subsequent claim that had not ripened yet when the claim has been brought." *Smith*, 275 F.Supp.2d at 814 (citing *Watts v. K, S & H*, 957 S.W.2d 233, 236 (Ky. 1997). Second, "a prior claim will not preclude a subsequent claim if the claim was based on matters which are not germane to, implied in, or essentially connected with the actual issues in the [second] case although they may affect the ultimate rights of the parties and might have been presented in the former action." *Id.* (internal quotes omitted). Blair appears to argue that both of these exceptions apply, and if her claims do, in fact, fall into either exception, she was permitted to split her actions and GEICO's first motion for summary judgment must fail.

The threshold question of the first exception is when does an Underinsured Motorist claim become ripe under Kentucky law? Blair seems to argue that her UIM claim was not ripe until after her settlement with the tortfeasor because only then could she have known that she qualified for those benefits. However, Blair acknowledged in the very next paragraph of her Response that she could have filed her UIM claim at the same time as her PIP claim but chose not to do so. [R. 11-5 at 2]. She claims that she made her decision to file the UIM claim after settlement based on the process authorized in *Coots v. Allstate*, 853 S.W.2d 895 (Ky. 1993).

However, in *Coots* the Kentucky Supreme Court states that, "from its inception, we have recognized that UM coverage is *first party coverage*, which means that it is a contractual obligation directly to the insured which must be honored even if the tortfeasor cannot be

identified." *Coots*, 853 S.W.2d at 898 (citing *First Nat'l Ins. Co. v. Harris*, 455 S.W.2d 542 (1970)) (emphasis in original). As such, "the carrier may be sued *without first obtaining a judgment against the uninsured motorist*," as the damages that the tortfeasor caused could be determined in the suit against the insurer. *Id.* (citing *Puckett v. Liberty Mutual Ins. Co., Ky.*, 477 S.W.2d 811 (1971)) (emphasis added). This is true for uninsured motorist claims as well as underinsured motorist claims. *Id.* In fact, the tortfeasor need not even be identified to maintain a suit. *Id.* Instead, the claim appears to ripen at the time of the accident and can be brought immediately in an action against the insurance company. Since Blair's UIM claim would have be ripe under Kentucky law at the time of the filing of initial PIP claim, ripeness may not then justify her splitting the PIP and UIM claims into separate actions.[1]

The applicability of the second exception is a closer question. As stated, the rule against splitting causes of action will not be enforced to bar a plaintiff's claim under Kentucky law if, "the claim was based on matters which are not germane to, implied in, or essentially connected with the actual issues in the [second] case although they may affect the ultimate rights of the parties and might have been presented in the former action." *Smith*, 275 F.Supp.2d at 814.

GEICO argues that PIP claims and UIM claims must be brought together or lost because they arise out of the same facts and the same insurance policy. [R. 13 at 2]. As a result, GEICO reasons, the same issues that appear in the first case would necessarily arise in the second. Because it is somewhat rare for an insured to bring suit on the basis of a PIP claim, neither of the

---

[1] GEICO's reply brief suggests that if Blair's second claim would have become ripe after she had filed the first, she would have been required to amend the complaint to include the second claim or lose it. [R. 13 at 2]. However, this contention is supported by no case law, and is in contradiction to the determination of other courts, including the Sixth Circuit, which has held that the plaintiff is not required to amend his or her complaint to include a newly ripe second claim when the first has already been filed. *See Rawe v. Liberty Mutual Fire Ins. Co*, 462 F.3d 521, 529-30 (6th Cir 2006). Either way, as the UIM claim would have been ripe at the time of filing, Blair cannot escape the rule against splitting by invoking the ripeness exception.

parties could produce a decision of the Kentucky courts as to whether identity of claims existed between PIP and UIM suits.  However, GEICO analogizes this case to the circumstances in *Kirchner v. Riherd*, 702 S.W.2d 33 (Ky. 1985), wherein a plaintiff brought suit in district court for damages to his vehicle and then filed suit in circuit court for personal injuries from the same accident.  The Kentucky Supreme Court concluded that identity of issues was present in that case and bringing them in two separate actions was impermissible splitting.  *Id*. at 34-35.  GEICO also cites to *Rawe v. Liberty Mutual Fire Ins. Co*, 462 F.3d 521 (6th Cir 2006), wherein the Sixth Circuit found that a UIM claim is preclusive of a later bad faith case against the same insurer arising from the same accident even though the type of injury was different.   In likeness, GEICO claims that when two claims arise out of the same accidents, the same injuries, and the same policy, the issues are sufficiently similar to require the cases to be brought together.

Blair counters that GEICO's argument "fails miserably" in demonstrating identity of causes of action because PIP suits and UIM suits have "no similarities whatsoever." [R. 11-5 at 4].  The brief even accuses the GEICO of bad faith in making the argument as "there is not a single issue of the PIP suit that would be raised in the tort/UIM suit in circuit court." *Id*.   In making these statements, Blair vastly overstates her position.    It is clear from the plain language of the policy that in order to recover PIP benefits and UIM benefits Blair would have to prove, among other things, a bodily injury, and that the injury was caused by an accident and arose out of the ownership, maintenance or use of a motor vehicle.  [R. 13 at 4].  Thus, as GEICO repeatedly argues, the issues of a PIP claim are generally germane to, implied in, or essentially connected with the same injuries of a UIM claim.

And while it may generally be true that similarity of issues between PIP and UIM claims

have essentially connected issues and give rise to identity of claims, the Court need not decide that point because the Laurel County District Court did not appear to consider the extent of injuries, causation, or any of these shared issues in dismissing the first case.  Blair states, and GEICO does not dispute, that the parties settled their initial PIP claim and GEICO paid Blair the remainder of her PIP benefits.  What the Laurel District Court dismissed was the remaining issues concerning "the amount of interest, court costs, and attorneys fees." [R. 11-5 at 2].  Unlike injuries and causation, the issues of interest, court costs, and attorneys fees in the PIP action are not germane to, implied in, or essentially connected with the UIM claim.  GEICO and Blair settled the substantive issues of the PIP claims, and what the Laurel County District Court decided is unrelated to the now pending UIM claim.  Therefore, because Blair's second claim falls into the second exception to the splitting cases doctrine, res judicata may not be exercised to bar her UIM claim and GEICO's motion for summary judgment must be denied as a result.

The same conclusion is evident when applying the basic elements of the res judiciata doctrine to these facts.  For res judicata to bar a claim, there must be identity of parties, identity of causes of action, and resolution of the case on the merits.  Though both causes of action involve the same parties, it is at least arguable that the other two elements do not apply.  As previously indicated, the interest, attorneys fees and court cost issues from the PIP action have no relationship to the UIM claim, and thus identity of issues is missing.  Further, since the parties settled the substantive PIP claims, it is difficult to say that the substantive issues were decided by the court on the merits so as to preclude the UIM claim.  As neither the res judicata doctrine nor the related rule against splitting claims bar Blair's UIM claim, GEICO's first motion for summary judgment is denied.

B.

GEICO's second motion for summary judgment is based on Blair's failure to disclose her expert witnesses in a manner that was timely under the Court's Scheduling Order or complete under the Federal Rules of Civil Procedure. Blair's many discovery errors are detailed above, and as a result of these failures, GEICO claims that Blair's expert evidence must be excluded pursuant to Fed. R. Civ. P. 37(c)(1). Because Kentucky law requires expert testimony to prove Blair's claims, GEICO argues that summary judgment would then be appropriate.

1.

Though the previous substantive issue was governed under Kentucky law, "the Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in federal courts." *Hayes*, 266 F.3d at 566 (6th Cir. 2001) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993)). The Federal Rules of Civil Procedure require that parties disclose the identities of any expert witnesses that they intend to use at trial to present evidence. Fed. R. Civ. P. 26(a)(2)(A). Further, when those witnesses do not provide a written report, the disclosure must state the subject matter, facts, and opinions to which the expert witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

Federal Rule of Civil Procedure 37(c)(1) provides sanctions for the failure of a party to make these required disclosures. Specifically, the rule states as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c). The Sixth Circuit has characterized Rule 37(c)(1) as requiring "absolute compliance" with Rule 26, with the sanction of exclusion being, "automatic and mandatory

11

unless the sanctioned party can show that its violation was either justified or harmless." *Roberts v. Galen of Va., Inc*., 325 F.3d 776, 782 (6th Cir. 2003) (citing *Salgado v. General Motors Corp*., 150 F.3d 735, 741-42 (7th Cir. 1998)).

Blair claims that the delay in filing "does not prejudice this Defendant in any way." [R. 18 at 1]. "Harmlessness, however, is the key under Rule 37, not prejudice." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). The Rule 37 advisory committee note, "strongly suggests that 'harmlessness' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party. *Id*. (citing *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision)). The party seeking to avoid the Rule 37 sanction has the burden of showing that its delay and omission was either substantially justifiable or harmless. *Roberts*, 325 F.3d at 782 (6th Cir. 2003).

This issue was the primary focus of the protective order granted by Magistrate Judge Edward Atkins to prevent the deposition of Blair's recently disclosed expert. [R. 34]. In that order, Judge Atkins found Blair failed to comply with Rule 26, and that this error did not meet the harmlessness standard of Rule 37(c) because it was not an "honest mistake." [R. 34 at 5]. On this point the Magistrate Judge stated:

> An honest mistake is one that would not indicate bad faith or an attempt to conceal information, which would include a genuine misinterpretation or misunderstanding of a rule or order. *Dennis*, 2010 WL 1957236, at *2. Deliberate disobedience of a court's deadline is not an honest mistake, regardless of a good reason for failing to comply. *Vance*, 182 F.3d 920, 1999 U.S. App. LEXIS 14943, at *17. This is especially true when the disclosure is not made "until the eve of trial, leaving [the opposing party] little opportunity to depose the expert and secure a rebuttal witness." *Rowe v. Case Equip. Corp*., 105 F.3d 659, 1997 U.S. App. LEXIS 227, at *8 (6th Cir. Jan. 2, 1997) (unpublished table decision); *see also Vance*, 182 F.3d 920, 1999 U.S. App. LEXIS 14943, at *16-17.

[R. 34 at 4]. Further, Judge Atkins noted that the fact that the proposed expert was a treating

physician is of no consequence because 2010 amendments to Rule 26(a)(2) clarified the rule to require the disclosure of any expert, whether retained exclusively for trial or not.  [*Id*. at 5].  As a result of this analysis Judge Atkins granted the protective order in favor of GEICO and denied Blair's motion to amend her disclosures.[2]

This Court agrees with the conclusion of the Magistrate Judge.  Blair did not adhere to Rule 26 in disclosing her expert and her failure to do so was neither harmless nor substantially justified.  Therefore, pursuant to Rule 37(c) this expert is mandatorily and automatically excluded.

2.

Without this expert, GEICO essentially claims that Blair is without medical proof, and she therefore cannot prove the required elements of her claim.  All parties agree that this action is a claim for Underinsured Motorist benefits.  KRS 304.39-320 provides that:

> Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.

In measuring the extent of the insurer's liability under this statute, Kentucky courts have placed weight not only on the language of the contract of insurance but also the amount that the insured is legally entitled to recover in tort from the underinsured motorist.  *Coots v. Allstate*, 853 S.W.2d 895, 899 (Ky. 1993).

The UIM provision of the insurance contract provides that GEICO, "will pay damages an

---

[2] Judge Atkins reaffirmed this decision in his subsequent Order denying Blair's motion to reconsider, in which he also found Blair's argument that the delay was justified to be unavailing. [R. 40].

insured is legally entitled to recover for bodily injury caused by an accident and arising out of the ownership and maintenance or use of an underinsured auto." [R. 13 at 4].  Therefore, in order to collect UIM benefits under the statute as well as the insurance contract, Blair must be able to prove, among other things, causation between the accident and her injuries.

"Kentucky law usually requires expert or medical testimony to establish that an incident legally caused a medical injury."  *Lacefield v. LG Electronics, Inc.*, No. 3:06-12-KKC, 2008 WL 544472 at *3 (E.D.Ky. 2008).  "There may, of course, be situations in which causation is so apparent that laymen with general knowledge would have no difficulty in recognizing it…But excepting those situations we have adhered to the rule that the causal connection between accident and injury must be shown by medical testimony and the testimony must be that the causation is probable and not merely possible."  *Id*. (quoting *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965)); see also, *Tatham v. Palmer*, 439 S.W.2d 938, 939 (Ky. 1969) (wherein Kentucky courts applied this rule in the context of an automobile accident)).  "The necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians."  *Id*. (quoting *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996)).  Failure of the plaintiff to secure an admission or "produce such testimony must result in dismissal of the action by entry of summary judgment."  *Goodwin v. CSX Transportation, Inc*., No. 3:07-CV-00483-TBR, 2010 WL 4226454 (E.D.Ky) (citing *Jarrett v. Saltz*, No. 2006-CA-001251-MR, 2007 WL 4355449, at *3 (Ky.App.2007)).

To this Court's knowledge, GEICO has made no express admissions as to causation of injuries and Blair's only expert, her treating physician, has been excluded.  Therefore, it must be determined whether the element of causation is of such a nature that the layman members of the

jury could look at the available evidence and determine whether and to what extent the accident caused the injury.  In *Tatham v. Palmer*, 439 S.W.2d 938, 939 (Ky. 1969), the Kentucky Supreme Court relied upon the layman's exception to allow recovery for the Plaintiff over the defendant's objection that there was no medical proof to support causation.  In that case, the Plaintiff was in an automobile accident in which his head was thrown against the windshield causing lacerations to his forehead and chin.  The Plaintiff was no longer able to work because of incessant headaches, which began after the accident.  Even though the Plaintiff did not elicit expert medical testimony from a treating physician, the Court allowed his recovery over the objection of the defendants because, "it is within the realm of common knowledge that a severe blow to the head will cause headaches."  *Id*.

However, the Court was careful to note that "the conclusion in this case does not mean we are departing from the rule requiring medical evidence to show causation when the claimed internal or external injuries allegedly resulting from accident are not within the realm of common knowledge."  *Id*.  In permitting recovery in this case the Court found the that conclusion that the accident caused the Plaintiff's injuries was supported by "competent evidence," which the court summarized as follows:

> The evidence produced in behalf of Palmer shows that Palmer had no headaches or nervousness prior to his accident. It was uncontradicted that he sustained lacerations to his forehead and chin which caused considerable bleeding at the time of the accident. It was also shown that for a period of five days following the accident Palmer was hospitalized and received medical treatment. It was further shown that scars to his forehead and chin were visible at the time of trial and that for several months slivers of glass worked out of the injury to his forehead.

*Id*. at 939-940.

The circumstances of this case are distinct from *Tatham*.   It should first be noted that

15

following GEICO's second motion for summary judgment, Blair countered with a one page response that was unencumbered by the citation to case law.  [R. 18].  Therein Blair did not in any way attempt to dispute that summary judgment was appropriate for her claim without the medical information she was late in disclosing.  She also failed to describe her injury or characterize it as an appropriate candidate for the layman's exception.  Instead, she simply indicated that her medical "records and these treating providers would make up her medical proof."  [R. 18 at 1].  However, her treating physician has been excluded and she took no initiative to point to the court to the alleged proof in her medical records that would overcome GEICO's motion.

Still, even a cursory review of the medical records demonstrate that this is not the kind of injury in which the casual connection is within the common knowledge of a jury.  In records from the Lake Cumberland Neurosurgical Clinic, Blair's evaluation reveals that following the accident she experienced neck pain. [R. 17-1 at 100].  However, the record also indicated that she had a history of neck pain and had been previously seen in the same clinic for this reason.  *Id*.  Another record seems to reference a previous brain tumor and that Blair potentially suffers from fibromyalgia.  *Id*. at 99.

It is conceivable that jurors could determine causation when they hear testimony that a man had never had headaches, see evidence that he was in a car accident, read the reports that he was treated in a hospital due to head injuries, look at the scar on his forehead, and hear his testimony that he now experiences debilitating headaches.  However, it is another thing all together to charge a jury of common men and women unaided by expert medical assistance with the task of sorting out how much, if any, of Blair's neck pain arose from the accident and how much can be attributed to her pre-existing neck pain, a previous brain tumor, or even

16

fibromyalgia.  In this case a juror could not reasonably infer from common or a layman's knowledge that the accident caused Blair's injuries.  *See Lacefield v. LG Electronics, Inc.*, No. 3:06-12-KKC, 2008 WL 544472 at *4 (E.D.Ky. 2008) (reaching the same conclusion concerning the ability of a jury to determine whether a cell phone caused the Plaintiff's tinnitus).

Pursuant to the language of the statute and the provisions of her insurance policy, for Blair to recover UIM benefits for her injuries she must be able to prove that those injuries resulted from the accident.  Without an admission from GEICO, medical testimony from an expert or her treating physician, or circumstances of the type that lay jurors could extrapolate from the evidence a causal connection between accident and injury, Blair is unable to make that showing as a matter of law.  Even Blair concedes in her motion for reconsideration that the exclusions resulting from the protective order are "tantamount to dismissal" in her case.  [R. 37-1, at 4].  Therefore, GEICO's Second Motion for Summary Judgment must be granted.

IV.

Accordingly, it is hereby **ORDERED** as follows:

(1)      The Defendant's First Motion for Summary Judgment [R. 10] is **DENIED**.

(2)      The Defendant's Second Motion for Summary Judgment [R. 15] is **GRANTED**.

(3)      The Court will enter an appropriate judgment.

(4)      This matter is **STRICKEN** from the active docket of this Court.

This 8th Day of January, 2013.



**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**